UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEPHANIE C.,                          *

    Plaintiff,                    *

v.                                     *       Civil Action No. EA-25-2895

FRANK J. BISIGNANO,                    *
  Social Security Commissioner,
                                       *
    Defendant.                    *

                                       *

MEMORANDUM OPINION

On September 3, 2025, Plaintiff Stephanie C. petitioned this Court to review the final

decision of the Social Security Administration (SSA or Commissioner) denying her claim for

benefits.  ECF No. 1.  This case was referred to a United States Magistrate Judge with the

parties' consent.[1]  ECF Nos. 3, 5; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before

the Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 12, 15–16.  No hearing is

necessary.  Local Rule 105.6.  This Court must uphold the decision of the SSA if it is

supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C.

§§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that

standard, and for the reasons set forth below, the Commissioner's decision is remanded for

further proceedings consistent with this Memorandum Opinion.

I.      BACKGROUND

    A.      Procedural History

On January 13, 2022, Plaintiff filed applications for Disability Insurance Benefits and

Supplemental Security Income under Titles II and XVI of the Social Security Act (the Act),

42 U.S.C. § 401 *et seq*. and 42 U.S.C. § 1381 *et seq*.  ECF No. 8-4 at 9, 16–17, 34.[2]  Plaintiff

---

[1]  This case was reassigned to the undersigned on May 6, 2026.

[2]  Page numbers refer to the pagination of the Court's Case Management/Electronic
Case Files (CM/ECF) system printed at the top of the cited document.

claimed that she was disabled within the meaning of the Act because she is unable to work due to Barrett's esophagus, refractory gastroesophageal reflux disease, hiatal hernia, obesity, lumbar degenerative disc disease, carpal tunnel syndrome, chondromalacia patella left knee, migraines, anxiety, dysthymic disorder, and agoraphobia with panic disorder.  ECF No. 8-3 at 21.  The SSA initially denied her applications on November 9, 2022.  ECF No. 8-5 at 3, 8. Plaintiff sought reconsideration, and the Commissioner affirmed the initial determination on January 26, 2024.  ECF No. 8-5 at 15–17, 19–21.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on August 21, 2024.  ECF Nos. 8-3 at 18, 35–59; 8-5 at 23.  On September 18, 2024, the ALJ rendered a decision in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 8-3 at 18–33. Plaintiff requested review of the decision, which the Appeals Council denied on July 8, 2025. *Id.* at 2.  The ALJ's September 18, 2024 decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

B.    **Statutory Framework**

The Social Security Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024).  The Act also authorizes Supplemental Security Income payments to "persons who have a 'disability.'"[3]  *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003).  Both of these programs define "disability" as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical

---

[3]  The primary difference between these two disability benefit programs is the applicant's employment history and financial resources.  *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Program provides benefits to individuals "who have contributed to the program while employed," whereas Supplemental Security Income provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy."  *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "The applicant bears the burden of production and proof during the first four steps."  *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At step five, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience."  *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5."  *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945.  The ALJ then uses the residual functional capacity determination at the fourth and fifth steps of the disability assessment.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe*, 826 F.3d at 180.

    **C.**       **The ALJ's Decision**

The ALJ initially determined that Plaintiff met the Act's insured status requirement through December 31, 2025.  ECF No. 8-3 at 20.  At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 27, 2020, the alleged disability onset date.  *Id.* at 20–21.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of Barrett's esophagus, refractory gastroesophageal reflux disease, hiatal hernia, obesity, lumbar degenerative disc disease, carpal tunnel syndrome, and chondromalacia patella left knee.  *Id.* at 21.  The ALJ also found that Plaintiff suffered from non-severe impairments of anxiety, dysthymic disorder, agoraphobia with panic disorder, and migraines.  *Id.*

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[4]  *Id.* at 23 (bold removed).  In reaching this conclusion, the ALJ evaluated the "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and the listing of impairments," which "are known as the 'paragraph B' criteria."  *Id.* at 21.  The ALJ concluded that Plaintiff did not have any limitations in any of the four functional areas.  *Id.* at 22.  With respect to Plaintiff's migraine symptoms, the ALJ noted that "she takes headache medications and has to lie in a dark room," and that the headaches "sometimes take 2 hours to subside."  *Id.* at 21.  Ultimately, the ALJ determined that the migraines were generally treated

---

[4]  Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments. Within Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).  The listing of impairments found in Appendix 1 is incorporated into the evaluation criteria for Supplemental Security Income benefits.  20 C.F.R. § 416.925.

with medications and monitored by her physicians, and that there was "no objective medical evidence of any complications or end-organ damage caused by the claimant's migraines." *Id*. In his analysis, the ALJ did not reference or discuss Social Security Ruling 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders (SSR 19-4p), 84 Fed. Reg. 44,667-01 (Aug. 26, 2019). *Id.*

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform light work . . . except . . . [that she] can occasionally lift/carry 20 pounds and can frequently lift/carry 15 pounds. She can sit for 2 ½ hours but must be able to alternate standing for 30-minutes after every 30-minutes of sitting. She can stand for a total of 7 hours but must be able to alternate to sitting for 5 minutes after every 35-minutes of standing. She can walk for one hour but must be able to alternate to sitting for 5 minutes after every 30 minutes of walking. The claimant can push and pull as much as she can lift and carry. She can handle items frequently bilaterally. She can finger frequently bilaterally. She can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, stoop frequently, kneel occasionally, crouch occasionally, and crawl occasionally.

*Id.* at 24 (bold removed).

At the fourth step, the ALJ determined that Plaintiff could still perform her past relevant work as a pharmacy clerk because it did not require exertion precluded by her residual functional capacity. *Id.* at 28. The ALJ noted that past relevant work must, among other things, fall within the last five years. *Id.* The ALJ did not reference or discuss Social Security Ruling 24-2p, Titles II and XVI: How We Evaluate Past Relevant Work (SSR 24-2p), 89 Fed. Reg. 48,479-01 (June 6, 2024). *Id.* at 20–21, 28. Further, the ALJ did not indicate which date he relied upon to determine that Plaintiff's past work as a pharmacy clerk was relevant. *Id.* at 28. At step five, the ALJ determined there were other jobs in the national economy that Plaintiff could perform given her residual functional capacity. *Id.* at 28–29. The ALJ then concluded that Plaintiff had not been under a disability as defined in the Act, and the SSA properly denied her applications for benefits. *Id.* at 29–30.

## II.    DISCUSSION

On appeal, Plaintiff contends that (1) the ALJ did not rely on the correct standards for assessing migraines under SSR 19-4p, which renders his residual functional capacity determination deficient and (2) did not apply the correct standard governing the timeframe to be used when determining past relevant work.[5] ECF No. 12 at 7–15. The Commissioner argues the opposite. ECF No. 15 at 6–22.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id.* Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence."). The phrase "substantial evidence" is a "term of art" that "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek* v. *Berryhill*, 587 U.S. 97, 102-103 (2019) (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion."). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

---

[5] Plaintiff also contends that the Administrative Law Judge's (ALJ) assessment of her mental limitations is not supported by substantial evidence. ECF No. 12 at 8–14. It is unnecessary to address this argument because there are other grounds that require remand.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015); *Mascio*, 780 F.3d at 636-637. Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

## B.  Migraines

Plaintiff argues that the ALJ failed at step two of the five-step sequential analysis to analyze her migraines as a primary headache disorder as outlined by SSR 19-4p and that the ALJ's residual functional capacity determination is deficient because of the cascading effects of this error. ECF No. 12 at 11–15; 89 Fed. Reg. 48,479-01. The undersigned concurs.

"Social Security Rulings are final opinions and orders and statements of policy and interpretations that the Social Security Administration has adopted." *Mclaughlin* v. *Colvin*, 200 F. Supp. 3d 591, 599 n.5 (D. Md. 2016) (citing 20 C.F.R. § 402.35(b)(1)) (internal quotation marks omitted). "Once published, [Social Security Rulings] are binding on all components of the Social Security Administration." *Id.* (citing *Heckler* v. *Edwards*, 465 U.S. 870, 873 n.3 (1984)); *see also* SSR 19-4p, 84 Fed. Reg. at 44,668 ("Although SSRs do not have the same force and effect as statutes or regulations, they are binding . . . as precedents in adjudicating cases."). "Although there is no requirement that an ALJ cite to Social Security Rulings . . . , the ALJ's decision must be based upon application of the correct legal standard and supported by substantial evidence in the record." *Paul P.* v. *Saul*, Civil Action No. GLS-

19-2793, 2021 WL 1134751, at *3 (D. Md. Mar. 24, 2021) (citing *Arakas v. Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020)).

SSR 19-4p provides guidance on how the SSA establishes that a claimant has a medically determinable impairment of a primary headache disorder, including migraines, and how the SSA evaluates such disorders in disability claims. 84 Fed. Reg. at 44,668. SSR 19-4p categorizes headaches into primary and secondary headaches. *Id.* at 44,669. A primary headache disorder occurs independently of other medical conditions, such as fever, infection, high blood pressure, stroke, or tumors, and is therefore treated as a medically determinable impairment.[6] *Id.* A secondary headache is a symptom of an underlying condition and is therefore not a medically determinable impairment on its own. *Id.* SSR 19-4p discusses the diagnostic criteria for primary headache disorders and how a primary headache disorder is established as a medically determinable impairment. *Id.* at 44,669-44,670. SSR 19-4p acknowledges that primary headache disorders are not included in the Appendix 1 listing of impairments. *Id.* at 44,670; *see also* footnote 4, *supra*. It further advises that, within Appendix 1, 11.02 (epilepsy) "is the most closely analogous listed impairment for [a medically determinable impairment] of a primary headache disorder," and outlines criteria for ALJ's to consider when determining whether a primary headache disorder is equal in severity and duration to Listing 11.02. 84 Fed. Reg. at 44,671; *see also Misty M.* v. *Commissioner of Soc. Sec.*, Civil Action No. EA-25-619, 2026 WL 730248, at *3 n.9 (D. Md. March 16, 2026). SSR 19-4p also instructs that the limiting effects of primary headache disorders should be considered and discussed in the residual functional capacity assessment. 84 Fed. Reg. at 44,671.

---

[6] Social Security Ruling 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, defines various types of headache disorders, including migraines, which it identifies as "vascular headaches involving throbbing and pulsating pain caused by the activation of nerve fibers that reside within the wall of brain blood vessels traveling within the meninges (the three membranes covering the brain and spinal cord)." 84 Fed. Reg. 44,667-01, 44,669 (Aug. 26, 2019).

Here, the ALJ did not reference SSR 19-4p or apply the guidance contained therein. ECF No. 8-3 at 24–28. At step two, the ALJ did not discuss the diagnostic criteria outlined in SSR 19-4p or determine whether Plaintiff's migraines were primary or secondary. ECF No. 8-3 at 21; 84 Fed. Reg. at 44,671. Instead, the ALJ briefly noted (1) the duration, intensity, and effects of Plaintiff's migraines; (2) that they were monitored by her doctors; and (3) that there is no end-organ damage caused by migraines—something not mentioned in SSR 19-4p. ECF No. 8-3 at 21; 84 Fed. Reg. 44,667-01. Further, the ALJ did not assess whether Plaintiff's migraines medically equaled impairment listing 11.02 (epilepsy) at step three. ECF No. 8-3 at 23–24; SSR 19-4p, 84 Fed. Reg. at 44,671. These defects constitute error. *Dorn* v. *Kijakazi*, No. 4:22-CV-03329-TER, 2023 WL 3143915, at *5-6 (D.S.C. Apr. 28, 2023) (reversing where the ALJ did not follow SSR 19-4p's guidelines when assessing the plaintiff's migraines); *Worley* v. *Berryhill*, No. 7:18-CV-16-FL, 2019 WL 1272540, at *7 (E.D.N.C. Feb. 4, 2019), *report and recommendation adopted*, 2019 WL 1264870 (E.D.N.C. Mar. 19, 2019) (reversing where the ALJ did not mention Listing 11.02, discuss the plaintiff's migraine impairment in light of the listing's medical criteria, or explain his determination that the plaintiff's migraine impairment did not medically equal a listing); *cf. Dawn C.* v. *Bisignano*, Civil Action No. SAG-24-03495, 2026 WL 575295, at *5 (D. Md. Mar. 2, 2026) ("The ALJ also considered Plaintiff's migraines in combination with other impairments *as directed by* SSR 19-4p.") (emphasis added). The errors are not harmless because "there is no indication that the ALJ gave sufficient consideration to plaintiff's migraines when he defined plaintiff's [residual functional capacity]." *Amy W.,* v. *Saul*, No. 1:20CV392 (LMB/TCB), 2021 WL 3009003, at *5 (E.D. Va. July 15, 2021).

Contrary to SSR 19-4p, the ALJ did not address Plaintiff's migraines in his residual functional capacity determination. ECF No. 8-3 at 24–28; 84 Fed. Reg. at 44,671. When formulating a residual functional capacity, an ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-

9

function basis, how they affect [the claimant's] ability to work.'" *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996) (providing that an ALJ must consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe,'" when assessing a claimant's residual functional capacity) (emphasis added).  A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311.  The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two."  *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.").

Here, the report of nurse practitioner Jamesha Wise, which the ALJ partially relied upon, contains a history of Plaintiffs migraine symptoms, including her photophobia, sensitivity to sound, nausea or vomiting, dizziness, and sharp and tingly pain (rated as a 10 on a 10-point scale).[7]  ECF No. 8-8 at 367–368.  Ms. Wise's report further notes that Plaintiff's migraines, which are improved with pain medicine and exacerbated by heat and sun, occur six times a month and last days to weeks.  *Id.*  Plaintiff's testimony also provides insight into the intensity of her migraines and the possible restrictions that are needed.  ECF No 8-3 at 45–47.  Despite this evidence, the ALJ's residual functional capacity determination does not include limitations to address Plaintiff's migraines or an explanation as to why no limitations are warranted.  *Id.* at 24–28.  The inadequacy of the ALJ's analysis of Plaintiff's

---

[7]  "Photophobia" is "intolerance to light" or "painful sensitiveness to strong light." "Photophobia." Merriam-Webster Dictionary, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/photophobia (last visited June 30, 2026).

migraines in her residual functional capacity requires remand. *Davis* v. *Bisignano*, No. 5:24-CV-648-KS, 2026 WL 852124, at *4 (E.D.N.C. Mar. 27, 2026); *Amy W.*, 2021 WL 3009003, at *5.

### C.   Past Relevant Work

Plaintiff also argues that the ALJ reached his determination at step four through a misapplication of the correct legal standards. ECF No. 12 at 7–8. Again, the undersigned concurs. Plaintiff's argument centers on the allegation that the past relevant work identified by the ALJ fell outside the five-year window required by SSR 24-2p. *Id.*; 89 Fed. Reg. 48,479-01. SSR 24-2p provides that past relevant work is "generally measured from the date of [the SSA's] determination or decision on a claim." 89 Fed. Reg. at 48,480. Plaintiff contends that her past relevant work "concluded before the beginning of the governing five-year period." ECF No. 12 at 8.

As the Commissioner acknowledges, there is a conflict in the record "pertaining to exactly when in 2019 Plaintiff left her job as a pharmacy technician at Giant." ECF No. 15 at 20–21. The Commissioner correctly notes that Plaintiff bears the burden of providing information regarding her employment history and her inability to return to past relevant work. *Id.* Nevertheless, the United States Court of Appeals for the Fourth Circuit has instructed that an ALJ has a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook* v. *Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). An ALJ must therefore make a reasonable effort to acquire information, make determinations of fact, and develop the record. *Hays*, 907 F.2d at 1456 ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). The unresolved conflict regarding the dates the ALJ relied on, together with his failure to apply SSR 24-2p's standard for calculating the relevant timeframe for past relevant work, also constitutes grounds for remand.

## III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.

Date:  June 30, 2026                                                            /s/

                                                           Erin Aslan
                                                           United States Magistrate Judge